## NICHOLAS *v.* TANNER.

1. Where a second new trial was granted on a specified ground and expressly overruled on every other ground of the motion therefor, and the original bill of exceptions to this court assigns error only upon the grant of a new trial, no cross-bill of exceptions being taken to the action of the court upon those grounds of the motion which were overruled, this court will pass only upon the question raised in the ground of the motion upon which a new trial was granted.

2. A plaintiff can not recover damages for the consequences of negligence which, by the exercise of that degree of care required of him by law, he could have avoided.

Argued January 28, — Decided February 11, 1903.

Action for damages.    Before Judge Lumpkin.    Fulton superior court.    August 18, 1902.

*John T. Pendleton* and *James L. Key*, for plaintiff.

*Payne & Tye* and *J. A. Noyes*, for defendant.

CANDLER, J.    We take the following from the statement of facts embodied in the opinion filed by the learned and painstaking judge who tried this case in the court below.    On March 22, 1897, certain property of Ann Nicholas was destroyed by fire.    On July 6, she filed in the office of the clerk of the superior court a suit against the British America Assurance Company, based on a policy of insurance alleged to cover the property.    One clause in the policy provided that "no suit or action on this policy, for the recovery of any claim, shall be sustained in any court of law or equity, unless commenced within twelve months next after the fire." The next term of the superior court after the filing of the petition began on the first Monday in September, 1897.    No process was attached to the declaration until October 1, after the commencement of the term, when the clerk's deputy attached such process, requiring the defendant to appear at the spring term, 1898, which convened on the first Monday in March of that year; and service of the petition and this process was made on the defendant on October 4, 1897.    Subsequently, on March 31, 1898, a motion to vacate the former service was made by counsel for the company. This motion came on to be heard on January 18, 1899, at which time an order was taken by plaintiff's counsel, seeking to make the spring term of court, 1899, the return term, and directing process to issue and be attached, and service to be had.    On demurrer, at the spring term, 1899, the superior court dismissed the case, hold-

ing that what had been done did not amount to the commencement of a suit on the policy within one year from the date of the fire, and that the action was barred. This judgment was affirmed by the Supreme Court. *Nicholas* v. *British America Assurance Co.,* 109 *Ga.* 621. The plaintiff then brought a suit for damages against the clerk, based on his failure to attach process in the proper time. On the trial the defendant contended, among other things, that when the failure to attach process in the original case was discovered, after the term of court had begun, a deputy-clerk called the attention of the attorney of the plaintiff to the fact, and asked direction from him, and that under his direction the process was annexed on October 1, and service made. This was denied by the attorney, who testified that he never heard of any failure to attach process until more than a year after the date of the fire. On this subject there was a conflict in the evidence. On the trial the jury found for the plaintiff, this being the second verdict rendered in her favor. The defendant made a motion for a new trial, which was granted, upon the sole ground that the court should have charged, in effect, that if the jury believed that the plaintiff or her counsel had knowledge, within one year from the date of the fire, that the clerk failed to attach process to the petition against the insurance company and serve the same, ordinary care required that she dismiss her suit and bring it over within the time provided by the contract of insurance, and failure to do this would prevent her from recovering from the clerk. The motion contained numerous other grounds, all of which the court expressly overruled, basing his decision squarely upon the reason just indicated. On the argument of the case in this court counsel for the defendant in error sought to call in question the correctness of the ruling of the court below on all the grounds of the motion; but as no cross-bill of exceptions was filed, and as there was no assignment of error by either party on the overruling of the remaining grounds of the motion, this court will not consider those grounds, but will confine itself to the single question whether or not the trial judge was correct in the conclusion of law declared by him in the opinion filed at the time of the rendition of the judgment granting a new trial.

The plaintiff in the court below contended that neither she nor her attorney knew anything about the failure of the clerk to attach process to her petition and serve the papers upon the defendant com-

pany, until March 31, 1898, which was more than twelve months after the fire. This issue of fact was fairly submitted to the jury, and the court charged in this connection that it was the duty of the plaintiff, through her attorney, to use ordinary care to avoid the consequences to her of the defendant's negligence, and that if the plaintiff or her counsel, after discovering that the clerk had failed to attach process and serve the petition, could, by the exercise of ordinary care, have avoided the consequences to the plaintiff of the clerk's negligence, the plaintiff could not recover. The defendant contended that the court should have charged that if the jury believed that the plaintiff or her attorney had knowledge, previously to the expiration of twelve months from the fire, of the failure of the clerk to attach process and make service, it was the duty of the plaintiff to dismiss her suit and bring it over; that if the plaintiff had such knowledge and failed to take this step, the rule as to ordinary care was not applicable, this conduct on the part of the plaintiff's counsel being in itself a participation in the negligence of the defendant. The defendant admits that he was negligent, but claims that as soon as he learned of this negligence he informed the plaintiff's counsel of the condition of his case, and advised him to dismiss the suit and bring it again, offering to pay all the costs that had accrued in the original case; and it is conceded that if this course had been pursued, or if the proper order of court had been taken at this time to save the suit then in court, the plaintiff would not have been materially injured. The court below, after a consideration of this view of the case, concurred therein, and granted a new trial because of his failure to present this view to the jury. After a most careful reading of the entire record, we conclude that the view taken by the lower court was correct, and that the case should be tried again. We do not, of course, intimate any opinion as to the truth of the issue of fact upon which the case turns. That question is one solely for the determination of the jury. If they should find that the plaintiff or her attorney had knowledge of the admitted negligence of the clerk in time for her to have taken such legal action as would have preserved her rights, and that through her attorney and representative she failed and refused to take such steps as would have prevented injury to her from the defendant's negligence, then, in our opinion, she can not recover in her action against the clerk any greater amount than her damage would have been had she taken

the proper action at the time that it is claimed this knowledge was brought home to her through her attorney. On the other hand, if the jury should determine that neither she nor her attorney had any knowledge of the negligence of the clerk until after the expiration of the twelve months within which her suit could have been brought against the insurance company, and that by the exercise of ordinary diligence the plaintiff could not have prevented the injury to her caused by the negligence of the clerk, then she would be entitled to recover as damages from the clerk whatever amount she could have recovered from the insurance company.

We do not think that the law as to the court's telling the jury what would be negligence, or what facts would constitute ordinary care in a given case, has any application to the question at issue here. It is well settled in this State that while it is the duty of the judge to explain to the jury what is meant by ordinary care, he can not properly direct them to find that certain things do or do not constitute ordinary care. Negligence and diligence, as has been often ruled by this court, are questions for the jury, to be determined by the facts of each case, and for a judge to declare when either is proved would be to encroach upon the province of the jury. The only qualification of this rule is that where the law itself requires or forbids the doing of an act, the court may instruct the jury that ordinary diligence requires that such act be or be not done. If the contention of the defendant in this case is true, while he himself was negligent, the plaintiff's attorney could, by dismissing the suit and bringing it again, have reduced the damages accruing thereby to that which would have arisen from the six months' delay from one term of court to the next. When the clerk informed the attorney of the wrong which had been done to his client (if, as a matter of fact, he did so inform him), he did all that was lawfully in his power to do to repair the injury. He could not, without authority, dismiss the suit and bring another. On the other hand, it was easily within the power of the plaintiff's attorney to entirely save his client's rights, at very little cost in time or money. A case directly in point, and which clearly establishes the principle which we have announced, is that of Wright *v.* Keith, 24 Me. 158, from which we quote the following : " In an action against an officer for a false return, made by mistake, in certifying that he had left with the plaintiff a true copy of a notice to appear and submit

to an examination, etc., that he might thereby prevent the issuing of an execution against his body (under the poor-debtor act of 1831), when in fact there was an error in the copy; and the mistake was known to the present plaintiff in season to have avoided any inconvenience thereby, at a trifling expense; *it was held*, that the plaintiff was entitled to recover only such sum as would have fully paid him for ascertaining the truth, and not damages for the injury sustained by him in being arrested and imprisoned on the execution." The case of Loker *v.* Damon, 17 Pick. (Mass.) 288, while different as to its facts, clearly announces the doctrine applicable in the case at bar. In the opinion the court says: "In assessing damages, the direct and immediate consequences of the injurious act are to be regarded, and not remote, speculative, and contingent consequences, which the party injured might easily have avoided by his own act. Suppose a man should enter his neighbor's field unlawfully, and leave the gate open; if, before the owner knows it, cattle enter and destroy the crop, the trespasser is responsible. But if the owner sees the gate open and passes it frequently, and wilfully and obstinately or through gross negligence leaves it open all summer, and cattle get in, it is his own folly. So if one throw a stone and break a window, the cost of repairing the window is the ordinary measure of damage. But if the owner suffers the window to remain without repairing, a great length of time after notice of the fact, and his furniture, or pictures, or other valuable articles sustain damage, or the rain beats in and rots the window, this damage would be too remote."

To the same effect is the opinion of McCay, J., in *Smith* v. *Frost*, 51 *Ga.* 339. That was a case where cotton had been stored with the defendants as warehousemen, and the houses containing it were seized by the Confederate authorities to be used as a military hospital, and the cotton thrown into the street. It seems that the cotton was seen by one of the defendants, and that there was a strong probability that it was also seen by the plaintiff, after it had been thrown out of the warehouse. The court below charged the jury that though the cotton had been thrown out of the defendants' house by the vis major, yet if the defendants could, by the exercise of ordinary care, have recaptured and taken care of it, they were liable, and that the measure of damages was the value of the cotton at the time of the demand. It was held by this court that

under the facts of the case the charge was error, and that "The judge should have qualified this charge by adding, unless the plaintiff knew or had good reason to believe that his cotton or a portion of it was thrown out by the military authorities, in which case, if he could have saved it by the exercise of ordinary care, the defendants would not be liable, and that the jury, in determining the question of ordinary care, were to take into consideration the situation of the defendants and their ability, or want of ability, to exercise ordinary care in the matter." The reason of the rule which we have been discussing is thus explained in 1 Sedgwick on Damages, § 202: "It is frequently said that it is the *duty* of the plaintiff to reduce the damages as far as possible. It is more correct to say that by consequences which the plaintiff, acting as prudent men ordinarily do, can avoid, he is not legally damaged. Such consequences can hardly be the direct or natural consequence of the defendant's wrong, since it is at the plaintiff's option to suffer them. They are really excluded from the recovery as *remote*. In this view the doctrine would rest on the intervention of the plaintiff's will as an independent cause. *Ad hoc* he is not damaged by the defendant's act, but by his own negligence or indifference to consequences." In the present case we think that the able judge of the court below rightly concluded that he should have charged the jury that if, after the wrong done to the plaintiff was discovered by the defendant, he did all that was in his power to remedy that wrong, and the plaintiff, acting through her attorney, failed to do what the law required should be done in order to save her suit, there could be no recovery against the clerk for the subject-matter of that suit. See, in this connection, Civil Code, § 3802.

The question of the right of the plaintiff to recover from the insurance company the amount of her policy if the suit had been properly brought and served within twelve months from the date of the fire has already been twice submitted to a jury, and each time decided in her favor; and as the defendant in error did not properly make any point in this court as to the correctness of the finding in that respect, no good can be accomplished by again trying that issue. Direction is therefore given that upon the next trial that question be not submitted to the jury, but be considered as settled in favor of plaintiff.

*Judgment affirmed, with direction. By five Justices.*