## 47588.   SEABOARD COAST LINE RAILROAD COMPANY v. SHEFFIELD.

HALL, Presiding Judge. In action for personal injury and property damage, the defendant railroad appeals from the judgment and from the denial of its motion for judgment n.o.v.

The facts of this case are virtually undisputed. Plaintiff drove his automobile into the 30th car of a freight train as it was moving through a grade crossing at about midnight. The road at this point is perfectly straight and level with nothing to obstruct a clear view of the line. There are standard railroad cross-buck signs on the right hand approaches. Plaintiff testified: that he had traveled this road on the average of twice a day for the preceding three years; the night was cloudy and very dark; it had started "sprinkling" shortly before but it was not raining hard; there was no fog or other atmospheric condition obstructing his vision; he was traveling at about 20-25 miles per hour; there was no traffic coming from the opposite direction but he was using his dim headlights because of "laziness"; he heard absolutely nothing; but that he suddenly saw a big black object in the middle of the road, applied his brakes, slewed sidewise and hit the train. An accident investigator testifying for plain-

tiff stated that the road was wet and had some sand on it; that there were skid marks on the road for 48 feet before the point of impact; that there was a mercury-vapor light burning at a nearby store; and that while the night was indeed very dark, there was enough illumination at the scene for him to write up his report without a flashlight.

All the railroad employees on the train agreed that they had approached the crossing with lights on, horn blowing and bell ringing; that their speed at the crossing was 10-15 miles per hour; and that while they had flares on board, none were set out there that night. Plaintiff's critical allegations of negligence against the railroad were that it failed to warn that a dangerous crossing was blocked by a train either by providing automatic flashing signal lights or by requiring the use of flares when the train was so dark it blended into the darkness of the night.

It has long since been the rule in Georgia that there must be unusual or special circumstances at a crossing before a railroad has the duty to warn of something as starkly obvious as a train; or, conversely, before a driver is excused for not seeing something plainly visible within the range of the statutory headlights requirement. In the absence of such special circumstances, the duty to warn does not arise and the sole proximate cause of the collision is the negligence of the driver. *Burnett v. Louisville &c. R. Co.,* 58 Ga. App. 64 (197 SE 663); *Pollard v. Clifton,* 62 Ga. App. 573 (9 SE2d 782); *Evans v. Ga. Northern R. Co.,* 78 Ga. App. 709 (52 SE2d 28); *Ga. Northern R. Co. v. Stains,* 88 Ga. App. 6 (75 SE2d 833); *Atlantic C. L. R. Co. v. Marshall,* 89 Ga. App. 740 (81 SE2d 228). See also these Federal cases applying Georgia law: Atlantic C. L. R. Co. v. Kammerer, 239 F2d 115; Atlantic C. L. R. Co. v. Sapp, 248 F2d 889; Wood v. Atlantic C. L. R. Co., 192 FSupp. 351, affirmed 290 F2d 220; Gross v. Southern R. Co., 446 F2d 1057; and Annot. 84 ALR2d 813.

The issue here is whether unusual or special circumstances existed. We believe the plaintiff has failed to show any-

thing approaching them. He has shown a dark night with perhaps a light rain at the time of the collision. He admitted that no atmospheric condition obstructed his vision. The topography of the site was unusually *favorable* to visibility. An approach sign was in place, even if plaintiff had not been perfectly aware that a crossing existed there (for which he, of course, had a duty to stop, look and listen. *Code Ann.* § 68-1662). The train was in motion, presumably rumbling and clattering away in the fashion of freights, and only minutes before had been blowing horns and ringing bells.

We do not care for level crossings without flashing lights, crossbars, sirens, watchmen, and any other device one could imagine (although our fear is of being hit by a train rather than vice versa). Nevertheless, the legislature requires only a distinctive sign. *Code* § 94-511. Any duty beyond that must be examined in the light of the situation at a particular crossing and at a particular time. The legislature also requires a motorist to have headlights capable of illuminating an object at a distance of 100 feet on lowest beam. *Code Ann.* § 68-1713 (b). Where, as here, the line was completely visible at a distance of more than 100 feet down the road, there was no unusual weather condition obstructing visibility, and the train was complying with all other crossing safety requirements, the railroad simply had no duty to give any further warning of the presence of the train.

The court erred in denying defendant's motion for judgment n.o.v.

*Judgment reversed. Pannell and Quillian, JJ., concur.*
ARGUED NOVEMBER 7, 1972—DECIDED NOVEMBER 16, 1972.

*Nightingale, Liles & Dennard, B. N. Nightingale,* for appellant.

*Taylor, Bishop & Lee, James A. Bishop,* for appellee.